Good morning. Our next case is C R Bard Inc. v. AngioDynamics, Inc. Case number 19-1756. Uh, Counselor Maynard, are you, uh, are you ready? Yes, Your Honor. Okay. You may proceed. Now, let me make sure you, you reserve five minutes for rebuttal time, correct? Just three minutes, Judge Rainier, please. Three minutes, okay. You may proceed. Thank you very much. May it please the Court, Deanne Maynard for Bard. The District Court erred in taking this case away from the jury at the end of Bard's infringement case in chief. Bard had entered ample evidence from which a regional jury could conclude that AngioDynamics infringes all of the claims here. And the Court prematurely... Maynard? Yes. Maynard, excuse me. This is, uh, Judge Schall here. Um, leaving aside for the moment infringement, I wanted to ask you a question, kind of a procedural question. Um, there are two issues here. Well, let me, let me back up and ask this way. Um, do you believe that the District Court ruled that, uh, the claims at issue were ineligible for patenting under 101? Or do you believe that the District Court held the claims were invalid because they were obvious or anticipated? So, you could not have... Sorry, go ahead, Judge Schall. No, I'm just saying I'm puzzling a little bit over that, and I'd be interested to see if there was a 101 decision here in your view. I, I think that the judge, um, did rule on 101, Your Honor. I think it could not have ruled on, on obviousness because, um, that issue was, had not been raised at all yet at the trial. And, indeed, there's, even if there's not, was not ever a summary judgment motion on obviousness from the other side. So, obviousness can't be the basis for the decision. I don't think summary judgment on anticipation is the basis for the decision either because, um, the, the, the courts, uh, at, at the end of the trial, when he, when he ended the trial after our infringement case, the court said nothing about anticipation or, and the, the follow-up order didn't say he was granting any kind of summary judgment motion. Um, so the first... Ms. Maynard, excuse me, I'm sorry to, to jump in on you, but, um, where do you see the judge ruling, uh, on 101? Because I looked at the, uh, it came up at 25850 through 851. Um, there seems to be a reference to the claims being abstract, but then in looking at the actual, um, ruling, the written ruling that came down later, I didn't see any reference to 101 in there. Well, I, I grant you that the, the, it's not a model of clarity, Your Honor, and, um, you know, if the court were to read this as simply a grant of JMAL of non-infringement and nothing else, well, that's clearly wrong. Um, out of an abundance of caution, we briefed all the issues it could possibly be, um, because we didn't want to have waived anything by not presenting it to this court, because the, the district court's ultimate order, it mentions ineligibility, it mentions invalidity, um, in the very ultimate order when it explained the Rule 54B judgment. But if the court wanted to read the court... I...  Um, it's a little bit difficult when we can't see each other, so I apologize for the cutting in. Um, but at, uh, appendix page 18, it seemed to me that the judge at that page was suggesting that, um, the claims were invalid. Uh, he references these other, um, these other, these pieces of prior art, the Vortex Smart Port, and it seems to me that he was maybe saying, all right, the labeling, uh, or the printed matter didn't have patentable weight, so it didn't help you against these other, other things. It's a little bit unclear, but I read that 18 is sort of getting at possibly, uh, validity by anticipation or obviousness, although it wasn't stated. I, I don't think so. You're... It can't be getting at obviousness for the reasons I say. AngioDynamics never moved for summary judgment on obviousness, and that was never mentioned at the trial. I mean, the questions you're asking, I think, sort of highlight the problem here with the procedural posture of this case. The district court prematurely ended the trial. There's not a basis to grant JMAL of, of non-infringement because we put on ample evidence that AngioDynamics infringes, and AngioDynamics had the burden by clearing convincing evidence of proving ineligibility or invalidity, and it hadn't even put on its case yet, and we hadn't had a chance to defend our patent. And I think that the, the court could just reverse on that procedural ground alone, um, and, and, and... Go ahead, Judge. This is Judge... Oh, sorry. This is Judge... Go ahead, Judge Regan. Yeah, didn't the, didn't the court rule sui sponte? You know, after, after you, after, um, the case in chief was presented, the court ruled sui sponte that, um, the patents were not, quote, eligible under any circumstances. And at that point... I think he... Well... He did say that, Judge Regan. Yeah, so he, he brought up, um, he, he, the, AngioDynamics moved for JMAL at the close of our evidence on infringement only on non-infringement. And the judge then asked the parties, could he address eligibility now? Was that right to be ruled on? And AngioDynamics said, yes, it was. And we said, no, it's not. It's premature. Um, there are at least facts in dispute on that issue, and it's AngioDynamics' burden, and they haven't gone. I do, I do think that, you know, it does seem like the judge at the end of the trial terminated it because he thought these patents didn't survive 101. And I think that's clearly wrong. I think these patents are eligible at step one of 101, and if the court reaches that issue, it should so hold. These are claims to, to improved medical devices. They recite specific means, the combination of a power injectable port and a radiographic marker that must be perceivable. But what's the legal basis that we would make, make that type of a determination? I'm just, I'm, I, the procedural problem I have with the case is I don't know what the judge did. And because I don't know what the judge did, I have difficulty saying, this is what I'm going to do, and this is the basis on which I'm going to do it. And so this was not a, a, a section 101 decision on the JMAL. That's, that's what you're saying, correct? It, it, I, I think it was improperly timed if it was, Judge Rainier, because there were disputes of fact about, um, eligibility. Um, so we had moved before trial, uh, for summary judgment of eligibility at step one. And, and they had counter moved on 101, but the judge had sent it to trial on the grounds that there were disputes of fact under 101. And as this court has held in Berkheimer, there can be disputes of fact, especially at step two of the inquiry, and angiodynamics under Berkheimer for the burden to prove that by clear and convincing evidence. And at this point in the trial, it, it, the angiodynamics hadn't even put on its case. And so, you know, the judge faulted us in the colloquy that I think you're referring to, Judge Rainier, for failing to prove our patents valid. And that's error in itself, and that alone would be a basis to reverse without having to decide any of the ineligibility or invalid decision. Ms. Maynard, this, this is, um, Judge Stoll. Um, do you think that the best place in the court's written decision for, at least for thinking that it addressed eligibility, would be at page A15 at the top? Where, that to me seems to be the most clear section of the, of the court's opinion that addresses eligibility. Of course, it does, the judge's opinion does go on to make other assertions as well, but at least here, it says the court agrees this is an ineligible patent subject matter. He, he, you're looking at, um, let's see, I'm sorry, I'm on the wrong, you're looking at page 15. Uh-huh, at the top. Right, we're, yes, Your Honor, yes, Your Honor. And, and, and, but I think that that's, that's clearly, he's, he's wrong about that, um, for two reasons. One. Can I ask you something else? I'm not saying I agree with him. I just wanted to say that that's where I think maybe it's the clearest, but, but I just want to make sure I ask you this question. I want to know what your view is on printed matter. If, if we don't think this is printed matter, um, how does that, uh, relate to the 101 decision? It, it's kind of a complicated situation where, first, we have to see whether something's printed matter, and then we have to look at whether, uh, the, the claims are directed to an abstract idea, um, with or without the printed matter, I guess. Well, so, first, Judge Stoll, I think at the first step of Alice, it doesn't play any role, the printed matter. Angiodynamics has never argued that these claims are directed solely to printed matter. And, um, under this court's cases, then, you just look, you look in this report, you look at the claim as a whole, and as I started to say earlier, the claim as a whole is directed to a very concrete, specific invention, an improved port with, that has self-identifying radiographic features, um, and methods for using it. And then, the method claims are, have an additional reason for being valid, which is that they require a step of power injecting the patient. And under Banda Natural Alternatives, that's an additional reason to hold them valid at step one. So, at step one of Alice, I think you could hold these patents eligible to be patented without considering printed matter. I think the printed matter potentially comes in at step two of Alice, Your Honor. But I think you could also find that they have failed to show that, um, that, that there, that there's a lack of an inventive concept here. That would be their burden. And here, um, as an initial matter, um, the idea of power injectable ports itself was an inventive concept. This was something that the FDA warned against. AngioDynamics recognized that our ports were, were an innovation. Um, and so, um, and the fact that, you know, ports were later found to be, uh, able to withstand power injectability shows that it wasn't routine and conventional and well understood at the time of these patents to have power injectable ports at all, much less power injectable ports. Yes, Your Honor. Um, and Paige, what do you think, uh, if you could please maybe turn to page 18 of the joint appendix. Um, we have this large paragraph that starts off, the court finds this case is nothing but a labeling issue, and then it goes on. What do you read the district court as getting at in that paragraph? In other words, what is the judge district court saying or ruling in that paragraph? I think the judge, sorry, Your Honor. No, no, that's, I, I was just saying, I'm trying to figure that out. Again, I think to the extent this is a mystery, it, you know, it's all a reason to reverse and send it back. But, but, uh, but I think that my interpretation of that paragraph is that it's further explanation of the extent the judge ruled on patent eligibility as Judge Stoll points out. But the flaw in this rationale is that the judge, at step one, you don't focus in just on, you know, one element. And, and that, that, that is a legal error. You're supposed to look at the claim as a whole to decide whether it's directed to an abstract concept. And these claims clearly aren't. Let me ask you, I heard the, let me ask you if I, if I could indulge my panel colleagues and ask one question here. We have a decision of the magistrate in which she ruled that, um, there was a printed matter problem here. She said the printed matter didn't have patentable weight, as I understand it. And then after that, the district court judge, without going in any detail, said he adopted the magistrate's decision on that issue. Um, where are we on that? Well, I think the court doesn't need to reach printed matter to reverse for the procedural errors and the 101 step one issue I just discussed with Judge Stoll. But if the court does want to clarify that, I think the district court is wrong in finding that these claims, that the, that the radiographic letters in these claims do not receive patentable weight. Um, the, the, the material here, the radiographic marker is, is interrelated in the substrate. It's both structurally and functionally related to the other elements of the claim and receive, and receives patentable weight because of that. This is, it's, it's, it's, in, in, in some cases it is the very structure, it's the shape. But, but the printed, the printed matter does not include the radiographic markers. And the way I understand it, that the printed matter is directed to the content of the information and not even to the means of delivering that information, which is a radiographic marker. I agree with that completely. Okay, my next question is, if we were to, to send this back, wouldn't we have to make some sort of comment as printed matter to give guidance to the, to the, uh, to the court? I think it would be helpful to do that, Judge Reina. And first, I want to say, I agree with you that even if the information conveyed by the radiographic marker is not given patentable weight, you will, I agree with you that the radiographic marker itself must be, and that the, the, there must be a marker on the port that identifies the port as something, even if not as power injectable. But here, I think the power, sorry. One last very quick question is, um, um, do you agree that this court has never addressed the printed matter, uh, doctrine under the ALICE 101 analysis at step one? I do agree with that, Your Honor. And I, and I think, in fact, um, the, the court has suggested it, it doesn't come into play at step one, um, in, um, in, in Miller and in King. Um, I know I must be out of time, but if I could, I, I would like to say that I think, um, the, the method claims get a different printed matter analysis, and that, that, that under cracks there, the method claims are clearly functionally related to the rest of the claims, because they require, uh, actually injecting the fluid. And I, I do think if this court would clarify that the district court made an error when it remands, that would help proceedings going forward. Um, I, I, and again, my time has expired, so. Yes, it has, and we, we've got your argument, so thank you. Thank you, Your Honor. Okay, um. Counselor Tooley? Yes, Your Honor, I'm here. You may proceed. Thank you, Your Honor. May it please the court, this is Danielle Tooley arguing on behalf of AngioDynamics. Judgment was proper here because there were no disputed facts, and all the evidence showed that the claims amounted to nothing more than patents on the abstract idea of identification itself. All of the asserted claims are directed to the abstract idea of identifying information about prior art ports using industry standard labels. The claims recite no improved port structure. Is it, this is, this is Judge Reyna. Is it your position that the court addressed the Section 101 issue in its entirety and resolved it? Yes, it is, Your Honor. Um, as, uh, the court noted, um, the court first raised it at Appendix 25851 during the Jamal argument. Um, at that point, Your Honor, um, the court reiterated that all of the trial evidence made it clear that the patents were directed to an abstract idea. Um, at that point, um, Bard's counsel was invited to argue, and rather than addressing Step 1 at that point, um, Bard's counsel moved on to Step 2. Um, the, the fact that the court addressed Step 1 is further confirmed, um, at JA 15 of the court's opinion, which Judge Stahl pointed to. Um, the, the court expressly addresses the abstract idea of identification of a label. Um, and then the court moves through doing a Step 2 analysis. Um, for instance, if we look at JA 12 to 13, um, the court correctly held that each of the claim elements are directed to generic recitations of prior art ports, industry standard labels, and standards of care that were routine, well understood, and conventional. At JA 14 to 15, the court says that the, the evidence of trial supported identifying ports capable of power injection by means of the medical record, the patient history, the product materials, or radiograph was routine, conventional, and required by the standard of medical care existing at the time of the alleged invention. Ms. Sullivan? Yes. Excuse me, this is, uh, Judge Stahl here. Yeah, I, this is, to me, is an interesting question, uh, picking up on what Judge Reyna asked you. At page 13, the judge said the court concludes that the method claims recite, recites claims that are routine, well understood, and conventional, and then sort of ties that in to, uh, a printed matter question by saying, um, not entitled to patentable weight because such information is not patent eligible subject matter. So, I was trying to, I, you're absolutely right in terms of what, what the judge said there, but I was trying to think when I was preparing the case and looking at this, I'm saying, you know, is the judge saying here, these claims fail because they don't meet 101, or is the judge saying these claims, uh, involve printed matter and it doesn't rise to patentable weight because it's not functional? Um, I, I think here, Your Honor, the court, um, is citing In re Marco Goldenar, and the court is recognizing that the only inventive concept that Bard pointed to throughout this case is actually the printed matter. So, um, throughout trial, Bard has pointed to two inventive concepts, and one is the identification of the ports, and that's the abstract idea itself. The second is the information that's conveyed by the identifiable features. But as this court recognized in In re Marco Goldenar, the printed matter itself can't be what provides the inventive concept. Um, and, and that's in line with the, the court's cases, um, such as Nye, where the court reasoned that to, to hold otherwise would be allowed to allow patentees to simply provide new instructions for an old product and continue to patent them. And that just can't be the inventive concept. And, and here, I think the court is recognizing that fact, that the printed matter can't be what the inventive concept is, and the abstract idea of identification can't be what the abstract, what, what the, um, inventive concept is. So, where the claims themselves recite no inventive technology for improving prior art ports, um, structure or functionality, or improving the radiographic marker or structurality, uh, functionality, um, that, that, that printed matter can't be what is the inventive concept. And, in fact, if we look at the, oh, I'm sorry. What is, what is the printed matter? Just so, do you want to ask a question? That's okay. You go ahead. I'll, I'll ask next, please. Okay. I'll be, I'll be done here real quick. Um, what if the printed matter is connected to a, uh, there's a functional relationship between the, the, the printed matter and a, and a function? Um, well, it's actually the information that has to have the functional relationship. So, it's not enough that the radiographic marker is itself located on the port. Um, for instance, in AstraZeneca, the court held that it doesn't matter, um, what, where, where the instructions are located if they're on a label. The instructions must actually be related to the underlying substrate to cause it to become a manufacturer with new functionality. But in this situation, in this situation, doesn't the functioning of one, one depend on the other? Um, no, no, Your Honor. It, it doesn't. Just because the radiographic, and that's actually highlighted by the fact that the claims also include separated features. Um, the separated features are claimed the exact same way as the radiographic markers. They provide no, um, structural details for either. And the separated features, um, are things like stickers and key chains and labels. So, the fact that those are separated from the port but serve the exact same function as the radiographic marker undercuts any argument that the radiographic marker itself creates, um, some kind of functional relationship. Um, also, the radiographic marker, the way it's claimed, the claims recite no structural details at all about how this radiographic marker, um, has to be applied, how it has to be viewed. Um, so, there's no structural elements to the, to that claim element. Instead, the claims... Why, why, excuse me, counsel. Sorry. Why isn't the phrase radiographic marker itself structural? Um, because there's, um, no dispute, Your Honor, that radiographic markers have long been known in the art. So, the fact that... Right, but just a minute. You said it's not structural at all. I don't know, the fact that it's known doesn't indicate whether it's structural or not. It's certainly a structure, and you've got to read claims from the point of view of one of ordinary people in the art, right? I agree, Your Honor, that the radiographic marker itself is structural, but it's the information that has to have some kind of, um, connection, functional relationship with the port. So, again, the fact that the radiographic marker itself is, um, it might be a structural element, it doesn't mean that it then has a structural relationship. Um, for instance, the magistrate reasoned that these claims here are unlike the claims in ROICA because the X-ray doesn't actually transform the information that's conveyed by the radiographic marker. Instead, it merely conveys that information. So... I'd like to ask you another question, if I could, about the material Appendix A-18. Um, here, at the very end of the opinion, the court has this paragraph that Judge Schall referred to earlier during argument about, you know, the court finds this case nothing but a labeling issue. And this whole paragraph really seems to be talking about the printed matter issue. How do you read this paragraph? So, I read that paragraph, again, as saying that the only inventive concept that BART has pointed to throughout this litigation is the, um, the content of this information. Um, but, again, because the content of the information isn't what makes the port power injectable, um, it's not, um, it's not, it can't be enough here. So, we're just like in Raymarco-Gouldenar where the fact that the etchings were on the dice didn't transform the dice into something new. The dice always, the dice was exactly the same as it existed in the prior art. And here we have admissions that this was, that the ports themselves are admitted prior art here. Um, we can go through, the patents say that the port structure was long known in the art and admissions came in at trial that BART actually, um, did its own power injection testing in off-the-shelf, um, prior art ports. So, it made no structural improvements to the, um, the ports themselves. Um, at, in its pretrial admissions and at trial, BART also admitted that it made no structural improvements to the radiographic markers themselves. Again, it just used industry standard labeling techniques. The same thing- Ms. Sullivan? Yes. Judge Sullivan here. Um, first of all, I, don't be bashful about telling me, uh, if you think what I'm going to say is totally wrong. Uh, that's your job at this point. But the way, the way I was looking at this case, I was thinking to myself, okay, first question I have to decide is, do we have patent eligible subject matter? Okay? That's question one. Then, question two is, all right, you would dispute this, but assume for the moment there is patent eligible subject matter under 101. The next thing I have to decide is whether the printed matter here, uh, bears a functional relationship to the underlying substrate in line with, say, Praxair and DiStefano, so that it can be used to withstand a validity challenge in the face of prior art. Okay? That's the way I was looking at the, the analytical construct. Am I right or wrong? Or half right or half wrong? So- You understand what I said? I, I understand what you're saying. So, printed matter is actually relevant to both the, um, invalidity and the eligibility context. Um, it, it does come up in a note, in, in validity cases where it can't be used to distinguish the art. And those are the cases like, um, the, the Praxair cases that you just referenced. But it also comes up in 101 cases such as Guldenar where it can't be relied on to, um, supply the inventive concept. And I think that that's really what the court's opinion was getting at in citing Guldenar. But what about saying, in this case, you don't have a 101 issue because you've got a physical object. You've got these, uh, these vascular ports. Uh, there's nothing, uh, you know, there's nothing abstract about them. They serve a, a very physical purpose. Now, they may well, there may well be a validity issue in terms of, uh, prior art. But why, why are these vascular ports, uh, ineligible under 101? Why are they abstract? They're physical. They're tangible. Um, your Honor, and I, I would say that in this case, we, we are like Chargepoint, um, where the patentee argued that improvement, um, to, the, the patentee argued improvements to, um, tangible items. But the claims didn't recite any improvements to tangible items. So, in, in Chargepoint, where the, the claims didn't recite any improvements to the tangible items themselves, and here, the claims don't recite any improvement to the structure or function of the ports themselves, then, again, this can, this is still ineligible subject matter, where the only inventive concept, again, comes back to the abstract idea of identification. Thank you for indulging my question. No, thank you, Your Honor. Um, and I, I just want to, um, get, get back to the, the issue of whether BARD had a chance to address ineligibility at trial. Um, BARD was not prevented from introducing evidence at trial, especially not evidence of its inventive concept in its case in chief. Um, BARD, in its case in chief, affirmatively told its invention story. And in telling its story, BARD introduced evidence, um, that it used off-the-shelf ports for its power injection testing, and that it had to make no structural changes to its off-the-shelf ports to have them structured for power injection, as, um, as the claims were construed. Um, it also introduced evidence that it used industry standard labels and industry standard radiographic markers, uh, to identify its ports. It introduced evidence that its ports were already being identified in conjunction with, um, CT procedures. And just as a noble pharma, having introduced this evidence, if there was any evidence related to an improvement, it was incumbent on BARD to raise it at that point. Um, Angiodynamics was able to get further admissions on cross, but in all instances, BARD had a chance to redress, to bring in any evidence that it thought was in dispute to show what improvements it actually added to either the structure or function of prior art ports or radiographic markers. Um, the, in BARD's brief, it points to examples of where it says that it was precluded from raising evidence related to invalidity or ineligibility. Counselor? Yeah. Let's, let's focus a little bit on the radiographic marker. Um, now you said, or you inferred about it, that it was routine and conventional. Isn't that question whether something is routine and conventional a fact question? Um, Your Honor, the question of whether something is routine or conventional, well understood and conventional, um, does have underlying factual issues as this court recognized in Berkheimer. But here, we're actually like the situation in Berkheimer where the court found that certain of the claims did not survive step two. So at step two in Berkheimer, the patentee admitted that the claim components existed for years before his patents. Um, and those limitations combined with limitations of analyzing and comparing did not transform the abstract idea into something patent eligible. So here, we are just like that. Um, the, the patent itself admits that all of this, um, all of the port structure was known in the art and that the radiographic labels and the separated features were all known in the art. And then at trial, the same admissions came in, that no changes had to be made for ports to be structured for power injections and that Bard actually knew that doctors were already using, um, prior art ports for power injection procedures. Um, so here, while step two may have a factual component, there are no facts in dispute. And I, I understand that I'm out of time, Your Honor. Okay, we have your case. We thank you very much for your argument. Ms. Maynard, you have, uh, three minutes. Thank you, Judge Rainey. I appreciate it. So I just want to say first, the printed matter inquiry is irrelevant to step one of Alice, and I think these patents are eligible under step one. If the court goes on and decides the printed matter issue to clarify matters for remand, I think the printed matter should be given patentable weight. The structure here, so first, the combination was inventive. It was by combining power injectable ports with radiographic markers that we introduced new functionality, and it became so. Before this invention, the FDA warned against power injecting, and after this invention, Bard's inventions became the accepted industry standard. This is like the functionality in Miller. So counsel, my friend wants to say, well, it didn't increase the power injectability of the port. Well, the functionality here, though, is like the combination in Miller, the measuring cup case. There, the measuring receptacle. Yes, Your Honor. One question. Am I correct in thinking, and please tell me if I'm wrong, that the significance of printed matter is if something is found, if printed matter is found to have patentable weight, the significance of that finding is that it can be used possibly to, as a factor in distinguishing over prior art. Am I right or wrong on that? That's correct, Your Honor. Okay. That's correct, and that's why it would be helpful to clarify it on remand. Here, the, go ahead. Sorry to jump in on you, but time is fleeting. So we could, in your view, say that this is printed matter, number one, but looking at the, in the Praxair DeStefano approach, it has patentable weight, but we can't say anything about whether, how that now stacks up against prior art that may be asserted, so we would have to go back on that. I think you would hold it eligible at step one under Alice, and then you would say that the printed matter had patentable weight and remand for further proceedings on that understanding. Like Judge Raymond's suggesting guidance, possibly. Yes, Your Honor. Like the court does in an analogous situation like with claim construction, sometimes you correct things for remand. It would be helpful to clarify it here. And here, just, I mean, two quick points. One, this is structurally related, like in ROICA, the happy, smiley face, unfrowny face. The ports, when seen on a radiographic, on an X-ray, are seen when planted inside a body. That's the beauty of it here. And then it's structurally related. It creates a foolproof way that a practitioner can see, once the port's inside a body, even if the person has lost the record, even if the person doesn't know, that the port is safe to be power injectable. And that was the, that is part of the invention. That furthers the invention, in the same way that the indicia on the measuring cup, even though the receptacle was a half cup, a half cup, a half cup, no matter what, when you put the indicia on it of a cup, it made it easier to make fractional recipes. You could still make fractional recipes without the indicia, just like, you know, potentially you could power inject a port that didn't have a radiographic marker, identifying it as power injectability. But this creates new functionality in the same way that the indicia on the measuring cup created new functionality. And the court should hold that the content here gets patented away. And at a minimum it does for the method claims under Praxair. And we would ask this court to clarify that and reverse the judgment for further proceedings. Counselor, before you sit down, let me, let me ask you something. Now you said that printed matter is irrelevant at step one. I'm not too sure of that. This court has never taken up that issue. And I think that if it was to, at this time, it would be one of first impression. But why would you say that it's irrelevant? Is it that definitive to you? Well, I think, no, it isn't, Your Honor. It's not, it's not definitive. So because of course, when you're at step one, you're looking at the claim as a whole in its entirety. And if you view printed matter, like the fact that there might be some printed matter in something like the fact that there might be a mental step or an abstract concept buried within a claim, you still step out and look at the whole claim in its entirety. And when you do that here, this is clearly eligible subject matter. It's an improved machine, an improved power injectable port with specific structural markings, radiographic markings. And I disagree with my friend. The specification does describe details about it. And so that's, that's why I think that. And so I think Judge Rania, if the claim were to printed matter in entirety, and Andrew Jenang just hasn't claimed that, then, then, you know, then the claim would be to, you know, that would be a different question, but where it's just a piece of the claim, that's not the inquiry. You don't focus on whether or not the printed matter limitation itself has patentable weight questions, whether the claim has a whole. Do any of my colleagues have any questions? No. Not for me. Okay, good. Well, we thank you for the arguments. This case is now submitted.